UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHARON HUNTER                          CIVIL ACTION

VERSUS                                 NO. 17-2015

JEFFERSON PARISH PUBLIC                MAGISTRATE JUDGE
SCHOOL SYSTEM ET AL.                   JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

This is an employment discrimination action by plaintiff Sharon Hunter against the Jefferson Parish Public School System (the "School System"); the Jefferson Parish School Board (the "Board"); the Board's individual members, Cedric Floyd, Marion Bonura, Ricky Johnson, Raymond St. Pierre and Melinda Doucet; and the School System's Superintendent, Isaac Joseph.   In her second supplemental and amending complaint, Record Doc. No. 41, Hunter asserts claims of sex discrimination, hostile work environment, constructive discharge and retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq.; reprisal in violation of the Louisiana Whistleblower Statute, La. Rev. Stat. § 23:967; breach of contract under Louisiana  law; and constitutional rights violations under 42 U.S.C. § 1983.   She seeks compensatory damages. Complaint, Record Doc. No. 1; First Supplemental and Amending Complaint, Record Doc. No. 19; Second Supplemental and Amending Complaint, Record Doc. No. 41.

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 25.

Plaintiff's claims against the School System; Title VII claims against the individual defendants in their individual and official capacities, if any; retaliation claims under the Louisiana Code of Governmental Ethics, La. Rev. Stat. § 42:1169; claims for punitive damages; and claims, if any, asserted in paragraphs 36 and 37 of plaintiff's original complaint were previously dismissed with prejudice. Order and Reasons on Motion, Record Doc. No. 29.

Plaintiff received leave to amend her complaint a second time, Record Doc. Nos. 34, 40, 41, to reassert some claims in her original complaint and first supplemental and amending complaint; to assert new claims under Section1983 and for breach of contract; and to attach four documents: (1) attorney Harold Koretzky's investigative report (the "Koretzky Report") regarding Hunter's grievance against defendant Floyd; (2) an unsigned, undated copy of the "Executive Assistant to the Board" job description (the "Job Description"); (3) the "Sexual Harassment or Other Forms of Harassment" section of the Board's policy manual (the "Harassment Policy"); and (4) the "Complaints (Grievances) and Appeals" section of the Board's policy manual (the "Grievances Policy"). Record Doc. No. 41.

Defendants filed a second Rule 12(b)(6) Motion to Dismiss all of plaintiff's claims, Record Doc. No. 44, which is pending before me. Plaintiff filed a timely memorandum in opposition to defendant's motion. Record Doc. No. 48. Defendant was granted leave to file a reply. Record Doc. Nos. 50-52.

Having considered the complaint as amended, the record, the written submissions of counsel, and the applicable law, **IT IS ORDERED** that defendant's Second Rule 12(b)(6) Motion to Dismiss is GRANTED IN PART and DENIED IN PART as follows.

I.    STANDARD OF REVIEW

Defendants move to dismiss plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under this rule, as clarified by the Supreme Court,

> "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007))).

"The Supreme Court's decisions in Iqbal and Twombly . . . did not alter the long-standing requirement that when evaluating a motion to dismiss under Rule 12(b)(6), a

court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff." Id. at 803 n.44 (quotation omitted); accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc., 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014)).

"With respect to any well-pleaded allegations[,] 'a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Jabary v. City of Allen, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting Iqbal, 556 U.S. at 664). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par., 456 F. App'x 336, 340 (5th Cir. 2011) (quotations omitted) (citing Iqbal, 556 U.S. at 695; Elsensohn v. St. Tammany Par. Sheriff's Ofc., 530 F.3d 368, 371 (5th Cir. 2008); In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 n.10 (5th Cir. 2007)).

Hunter attached to her second supplemental and amending complaint the Koretzky Report regarding the grievance she filed against Floyd; the Job Description; the Harassment Policy; and the Grievances Policy. Record Doc. No. 41.

> On a Rule 12(b)(6) motion, a district court generally must limit itself to the contents of the pleadings, including attachments thereto. The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.

<u>Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.</u>, 748 F.3d 631, 635 (5th Cir. 2014) (quotation and footnotes omitted) (emphasis added). The Koretzky Report, the Job Description, and the Harassment and Grievances Policies are thus part of the pleadings.

II.    <u>ANALYSIS</u>

    A.    <u>Section 1983 Claims Against Defendants Floyd and Joseph</u>

Defendants contend that plaintiff's civil rights claims must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and because the claims have prescribed. Defendants also assert an affirmative defense of qualified immunity, which is inapplicable at this stage of the proceedings.[1]

As an initial matter, I find that plaintiff has asserted a Section 1983 claim against defendants Floyd and Joseph <u>only</u>, and <u>not</u> against the other individual defendants, as postulated by defendants at Record Doc. No. 44-2, p.1 n.2. Hunter clearly identifies only Floyd and Joseph in her second amended complaint in alleging that "<u>Floyd and Joseph</u> acted under color of state law . . . when they deprived Plaintiff of her federal rights,

---

[1]

The court agrees with defendants that it is unclear whether plaintiff's Section 1983 claims are against Floyd and Joseph in their official or individual capacities. To the extent plaintiff raises any Section 1983 claims against Floyd and Joseph in their individual capacities,

> the Supreme Court has clearly held that plaintiffs are not required to anticipate a qualified immunity defense by providing greater specificity in their initial pleadings. The Fifth Circuit has also since held that a plaintiff is not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12."

<u>Roberts v. Kirkpatrick</u>, No. 3:14-812, 2016 WL 625055, at *3-4 (N.D. Tex. Jan. 25, 2016) (internal citation omitted) (quoting <u>Schultea v. Wood</u>, 47 F.3d 1427, 1430 (5th Cir. 1995)) (citing <u>Todd v. Hawk</u>, 72 F.3d 443, 446 (5th Cir. 1995))).

property interests and right to privacy and freedom from harassment," and that "<u>Floyd and Joseph</u> [committed] wrongful acts in violation of [Section] 1983." Record Doc. No. 41 at ¶¶ 70, 72, 73 (emphasis added). Hunter reiterates in her opposition memorandum that "[her Section] 1983 claims are based on [] <u>Floyd and Joseph's violation of [her] constitutional rights</u> to be free from gender based harassment, invasions of privacy and retaliation resulting [from] her constructive termination from her employment." Record Doc. No. 48 at p. 3 (emphasis added). The only mention of the other individual defendants in plaintiff's Section 1983 allegations is that they "voted not to receive[ ] the Koretzky report in violation of Plaintiff's right to file a complaint [and] have the complaint heard and reviewed." Record Doc. No. 41 at ¶ 78. This allegation is wholly insufficient to state a Section 1983 claim against the other defendants, especially in light of the remainder of plaintiff's allegations focused exclusively on Floyd and Joseph.

     42 U.S.C. § 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 claims and Title VII claims may be asserted concurrently, as plaintiff has done in this case. "When . . . unlawful employment practices encroach, not only on rights created by Title VII, but also on rights that are independent of Title VII, Title VII

ceases to be exclusive. At this point, § 1983 and Title VII overlap, providing supplemental remedies." Flot v. Orleans Par. Sch. Bd., No. 96-361, 1998 WL 915864, at *6-7 (E.D. La. Dec. 29, 1998) (citing Southard v. Tex. Bd. of Crim. J., 114 F.3d 539, 549 (5th Cir. 1997) (quoting Johnston v. Harris Cty. Flood Control Dist., 869 F.2d 1565, 1576 (5th Cir. 1989))); see also Jones v. City of Port Arthur, No. 1:12-CV-287, 2013 WL 149706, at *3 (E.D. Tex. Jan. 11, 2013) (citing Evans v. City of Houston, 246 F.3d 344, 356 n.9 (5th Cir. 2001); Southard, 114 F.3d at 548-50; Johnston, 869 F.2d at 1573; Jackson v. City of Atlanta, 73 F.3d 60, 63 (5th Cir. 1996)) ("As correctly concluded by the magistrate judge, Title VII does not provide the exclusive remedy for discrimination claims against a government employer."). Specifically, "[a]ssertions of sex discrimination . . . under § 1983 are not preempted by Title VII." Southard, 114 F.3d at 550.

Hunter asserts that Floyd and Joseph "deprived plaintiff of her federal constitutional rights by violating [them] or allowing her to be harassed and discriminated against, and having her privacy and her safety and security violated." Record Doc. No. 41 at ¶ 70. Hunter's allegations that her right to privacy was violated includes that defendants demanded her personal phone, email and text messages. Id. at ¶ 79. In that regard, Hunter sufficiently alleges federal law violations by Joseph and Floyd in their individual capacities that may be redressed pursuant to both Section 1983 and Title VII.

As to defendant's prescription argument, there is no federal statute of limitations for Section 1983 actions. Instead, state tort law defines the "contours and prerequisites of a § 1983 claim." Manuel v. City of Joliet, 137 S. Ct. 911, 920 (2017) (citing Carey v. Piphus, 435 U.S. 247, 257-258 (1978)). "For 1983 cases brought in Louisiana federal courts, the appropriate statute of limitations is one year." Auster Oil & Gas, Inc. v. Stream, 835 F.2d 597, 604 (5th Cir. 1988); La. Civ. Code art. 3536. "[A]ccrual of a section 1983 claim, which determines when the statute of limitations begins to run, is governed by federal common law. . . . [and] [t]he continuing violation doctrine is a federal common law doctrine governing accrual." Heath v. Bd. of Supervisors, 850 F.3d 731, 737 (5th Cir. 2017). "Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury." Smith v. Reg'l Transit Auth., 827 F.3d 412, 421 (5th Cir. 2016) (citing Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993)).

Hunter terminated her employment relationship with the Board in September 2015. She asserts that Joseph and Floyd continued to violate her constitutional rights after she resigned by demanding, in a letter dated February 26, 2016, that she deliver personal phone, email and text records. Record Doc. No. 41 at ¶ 79. She alleges that those violations were continuous and continued after March 15, 2016, when Joseph's administrative assistant innocuously asked plaintiff if she was going to respond to Joseph's document request. Id. at ¶ 81. Defendants rely on the termination of Hunter's

employment on September 15, 2015, for their prescription argument. Record Doc. No. 44-2 at p. 6. Hunter does not specify the date when she was contacted by Joseph's assistant, but says simply that it was after March 15, 2016 (less than one year before she filed her complaint on March 9, 2017).

Hunter and defendants have not briefed whether actionable employment discrimination may occur under Section 1983 <u>after</u> a public employee has left her employment or whether such acts might constitute a continuing violation that would suspend the running of prescription. The federal Fifth Circuit recently found that claims under Title VII or Section 1983 alleging <u>discrete</u> acts of discrimination <u>are not</u> subject to the continuing violation doctrine, but ongoing harassment/hostile work environment claims are. <u>Heath</u>, 850 F.3d at 737 (emphasis added). The <u>Heath</u> decision applies, explains the Supreme Court's decision in <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), and distinguishes between "discrete acts that form the basis of traditional discrimination claims" and ongoing harassment/hostile work environment claims that are continuous in nature because they involve repeated conduct. <u>Heath</u>, 850 F.3d at 737. A "hostile environment claim" may be ongoing and not discrete in that it "is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendants." <u>Id.</u> (quoting <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 128 (3d Cir. 2006)).

The only alleged act of harassment and retaliation that occurred within the one-year prescriptive period before plaintiff filed suit was the completely innocuous request from Joseph's administrative assistant, which allegedly occurred sometime after March 15, 2016, inquiring whether Hunter was going to respond to Joseph's prior request for documents. As <u>Heath</u> makes clear, discrete acts do <u>not</u> constitute continuing violations, and that single act by Joseph's assistant was discrete, isolated, and non-harassing.

> [T]he plaintiff must demonstrate that the separate acts are related, or else there is no single violation that encompasses the earlier acts. . . . [T]he violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window. . . .

<u>Stewart v. Miss. Transp. Com'n</u>, 586 F.3d 321, 328 (5th Cir. 2009) (citing <u>Morgan</u>, 536 U.S. at 118, 120)) (internal quotation omitted). The <u>Morgan</u> decision rejected the Fifth Circuit view that a party "'may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct.'" <u>Heath</u>, 850 F.3d at 737 (quoting <u>Morgan</u>, 536 U.S. at 117-18)). <u>Morgan</u> left in place, however, consideration of other factors in deciding whether the continuing violation doctrine applies, including "whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; [and] whether the alleged acts are recurring or more in the nature of an <u>isolated</u> work . . . <u>incident</u>." <u>Id.</u> at 736 (citing <u>Celestine v. Petroleos de Venezuela</u>

SA, 266 F.3d 343, 352 (5th Cir. 2001) (Celestine I)) (footnotes omitted) (emphasis added).

Applying these standards, I find that the sole act alleged by plaintiff within the one-year period simply does not state a plausible claim for a continuing violation. The alleged March 2016 communication from Joseph's administrative assistant, not Joseph himself – or worse, Floyd himself – was entirely innocuous, non-threatening, and non-harassing. Hunter's response – that she had already responded – reflects the routine nature of the communication and its separateness from the alleged harassment. This discrete act occurring about six months after Hunter severed her employment with the Board is a discrete and non-harassing incident that I cannot conclude is a continuing violation sufficient to constitute conduct rendering earlier actions occurring outside of the statute of limitations period actionable.

In addition, Hunter's filing of an EEOC charge did not interrupt or suspend the running of prescription on her Section 1983 claims. "It is . . . well settled that the fact that an individual filed a charge of discrimination with the EEOC, even if within the period allowed by the statute of limitations for the filing of such charges, does not toll the statute as it applies to claims arising under 42 U.S.C. § 1981 or § 1983." Williams v. S. Cent. Bell Tel. Co., No. 86-4493, 1987 WL 18816, at *2 (E.D. La. Oct. 20, 1987) (citing Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 465–66 (1975)); Taylor v. Bunge Corp., 775 F.2d 617, 618–19 (5th Cir. 1985).

Plaintiff's claims under 42 U.S.C. § 1983 regarding acts that occurred one year or more before she filed this lawsuit on March 9, 2017, are therefore prescribed and she has not alleged facts sufficient to state a claim for a continuing violation after expiration of the one-year statute of limitations for Section 1983 claims.

Accordingly, defendant's motion is GRANTED IN PART as to plaintiff's claims under 42 U.S.C. § 1983, which are dismissed with prejudice as <u>prescribed</u>. In addition, plaintiff's claims under 42 U.S.C. § 1983 against Floyd and Joseph in their official capacities, if any, are dismissed with prejudice as a matter of law. State officials acting in their official capacities are arms of the state, and a Section 1983 claim for damages may not be asserted against them. <u>Med RX/Sys., P.L.L.C. v. Tex. Dep't of State Health Servs.</u>, 633 F. App'x 607, 610 (5th Cir.), <u>cert. denied</u>, 137 S. Ct. 96 (2016) (citing <u>Lapides v. Bd. of Regents</u>, 535 U.S. 613, 617 (2002); <u>Howlett v. Rose</u>, 496 U.S. 356, 365 (1990); <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66, 71 (1989); <u>Stotter v. Univ. of Tex.</u>, 508 F.3d 812, 821 (5th Cir. 2007)).

B.    <u>Plaintiff's Breach of Contract Claims Against the School Board</u>

Defendants also seek dismissal of the Louisiana state law breach of contract claim asserted by plaintiff for the first time in her second amended complaint. Record Doc. No. 41 at ¶¶ 83-94. I note initially that plaintiff's allegations concerning the identity of the particular defendant or defendants against whom she asserts this claim are not entirely clear and are internally inconsistent. On one hand, plaintiff clearly alleges that she is "an

employee of the Jefferson Parish School Board [and] held the position of . . . the executive administrative assistant to the Jefferson Parish School Board." <u>Id.</u> at ¶ 50. She initially states that Joseph was "[h]er immediate supervisor[]," <u>id.</u> at ¶ 51, not her employer. She further alleges that "[m]ade defendant [as to this claim] is the JPSB [the Board]" and that she is "the executive administrative assistant to the Board." <u>Id.</u> at ¶¶ 83, 85. On the other hand, she alleges that her breached "employment contract" was "with the defendant<u>s</u>" and that she "is an employee of all the defendant<u>s</u>." <u>Id.</u> at ¶¶ 84, 85 (emphasis added).

As this court outlined in its prior decision, Record Doc. No. 29 at pp. 7-9, a Louisiana municipal school's employee, like plaintiff in this case, is employed by the school board, not by its individual members. The Jefferson Parish School Board is a juridical person, an entity with its own legal personality capable of making its own contracts for which it is responsible. <u>Id.</u> at pp. 7-8 (citing La. Civ. Code art. 24; <u>Spears v. Jefferson Par. Pub. Sch. Sys.</u>, 2013 WL 1868456, at *2-3 (E.D. La. May 2, 2013) (Vance, J.). It is axiomatic that any entity may only act through its human agents, such as a board superintendent or member. That axiom does <u>not</u>, however, render those agents individually liable for the contractual obligations the entity itself makes. Louisiana statutory law is clear that it is the "local public school board," not its individual board members or superintendent, which hires employees like plaintiff. La. Rev. Stat. § 17:81.9. Therefore, I find that Hunter cannot <u>plausibly</u> state, under the Rule 12(b)(6)

Iqbal/Twombly standard, a breach of employment contract claim against any defendant, except her actual employer, the Jefferson Parish School Board.

To allege a breach of contract claim, Hunter must allege the existence of a contract. Quality Flooring v. B.F. Constr. Co., 56 So. 3d 395, 399 (La. App. 4th Cir. 2011). In her second amended complaint, Record Doc. No. 41, Hunter attached only the Job Description, Record Doc. No. 41-2; the Harassment Policy, Record Doc. No. 41-3; and the Grievances Policy, Record Doc. No. 41-4, to support the existence and breach of an employment contract. Record Doc. No. 41 at ¶¶ 84-92. Defendants argue that plaintiff cannot state a claim for breach of contract because none of the documents attached to Hunter's second amended complaint constitute an employment agreement or contract. Record Doc. No. 44-2 at pp. 11-12.

Defendants are correct that the Job Description, Harassment Policy, and Grievance Policy do not create contractual obligations as a matter of applicable Louisiana law and that plaintiff's allegations that defendant violated of the provisions of these policy statements alone does not state a claim. "Louisiana federal and state courts have consistently held that employee handbooks do not have all four of the elements required for the creation of a contract." Wilson v. Exxon Mobil Corp., No. 12-1935, 2013 WL 592910, at *5 (E.D. La. Feb. 14, 2013) (citing Gilbert v. Tulane Univ., 909 F.2d 124 (5th Cir. 1990); Keller v. Sisters of Charity of the Incarnate Word, 597 So.2d 1113 (La. App.

2d Cir. 1992); <u>Wall v. Tulane Univ.</u>, 499 So.2d 375(La. App. 4th Cir. 1986)). As the Louisiana Fourth Circuit recently concluded:

> (1) There are <u>no Louisiana cases</u> holding that employee manuals, policies, or grievance procedures confer any contractual rights upon employees or create any exceptions to the 'employment at will' doctrine. (2) Several Louisiana cases have held that employee manuals as well as company policies and procedures do not confer contractual rights upon employees nor create any exceptions to the "employment at will" doctrine . . . Therefore, we hold that the [] Grievance Procedure created <u>no contractual rights</u> in favor of [the plaintiff]. . . . (3) The employee's "expectation" that the [defendant] would adhere to the provisions of the Grievance Procedure does not give him any legal rights. [Citation Omitted.]

<u>Square v. Hampton</u>, 144 So.3d 88, 98-99 (La. App. 4th Cir. 2014) (citing <u>Mix v. Univ. of New Orleans</u>, 609 So.2d 958, 964 (La. App. 4th Cir. 1992)) (emphasis added). Accordingly, defendant's motion is well-founded and is granted in part insofar as it seeks dismissal of plaintiff's breach of contract claims based solely on these documents and allegations that they were breached.

Plaintiff's breach of contract claims, however, extend beyond what is contained in these non-contractual documents. Plaintiff clearly alleges that she was employed by the defendant Board pursuant to an employment contract. <u>See</u> Record Doc. No. 41at ¶ 84 ("Plaintiff . . . had an employment contract with the defendants and the defendants breached the employment contract with the plaintiff."). It can<u>not</u> reasonably be disputed that an employment relationship existed between the parties.

The parties have cited no law requiring that plaintiff's employment contract must be in writing. While the Louisiana statute cited above requires certain written statements in connection with school board hiring, La. Rev. Stat. § 17: 81.9, it does not require that the employment contract be reduced to writing. Thus, it appears that Hunter's employment contract, like other Louisiana contracts, may be either written or oral. La. Civ. Code art. 1927.

> Under Louisiana law, a contract is formed by the consent of all parties established through an offer and acceptance. . . . "Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made <u>orally</u>, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. Civ. Code art. 1927. . . . No contract exists unless these requirements have been met (emphasis added).

<u>Taita Chem. Co. v. Westlake Styrene Corp.</u>, 246 F.3d 377, 386-87 (5th Cir. 2001); <u>Ingraffia v. NME Hosps., Inc.</u>, 943 F.2d 561, 565 (5th Cir. 1991) (citing La. Civ. Code arts. 1918, 1927, 1966, 1971, 2029 cmt. b; <u>Higgins v. Spencer</u>, 531 So. 2d 768, 770 (La. App. 1st Cir. 1988); <u>Thebner v. Xerox Corp.</u>, 480 So. 2d 454, 457 (La. App. 3d Cir. 1985)); <u>Hale v. M.J.J.K., LLC</u>, No. 12-1515, 2014 WL 2429376, at *4 (E.D. La. May 29, 2014) (citing La. Civ. Code arts. 1927, 1942; <u>Taita Chem. Co.</u>, 246 F.3d at 386-87; <u>Cajun Constructors, Inc. v. Fleming Constr. Co.</u>, 951 So. 2d 208, 214 (La. Ct. App. 1st Cir. 2006)).

By its nature, the relationship between an employee and her employer is contractual. <u>Central Healthcare Servs. v. Schwing</u>, No. 09-4289, 2009 WL 4060468, at

*2 (E.D. La. Nov. 20, 2009) (citing Hundson v. Allstate Ins. Co., 169 So.2d 598, 602 (La. App. 2nd Cir. 1964)). Essential elements, provisions, and obligations of any employment contract necessarily include pay and hours. See Orozco v. Plackis, 757 F.3d 445 (5th Cir. 2014) (quoting Gray v. Powers, 673 F.3d 352, 355 (5th Cir. 2012)) (in examining an employment relationship, the court asked "whether the alleged employer . . . (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment . . . ."); see also Wessels v. BSZ Med. PA, No. 16-297, 2017 WL 2999419, at *6 (W.D. Tex. June 20, 2017) (finding genuine issues of material fact as to the working relationship between plaintiff and defendant because it did not possess the "ordinary attributes, e.g., . . . agreement as to pay . . . working hours . . . etc.").

Plaintiff clearly alleges that defendant breached her employment contract as to pay and hours when she alleges that "defendant manipulated plaintiff[']s work hours [by] forcing her [to] work overtime without compensation, outside of normal working hours and forcing her to be on call 24 hours. (Ex. 2)." Record Doc. No. 41 at ¶ 86. If, as she alleges, plaintiff's employment agreement with the Board included that she would be paid overtime wages for hours worked in excess of eight hours a day, and she was not paid consistently with her employment contract, she may recover for breach of contract. Unlike her allegations concerning breach of the Harassment and Grievances Policies, these allegations are sufficient to state a breach of contractual obligations on which relief

may be obtained.  See Grabert v. Iberia Parish Sch. Bd., 638 So.2d 645, 646-47 (La. 1994) ("A petition claiming breach of contract by the payment of wages less than what is due . . . is clearly a cause of action asserting the right to recover unpaid wages. . . . virtually all claims for wages arise out of a breach of contract, oral or written, to pay wages for services rendered."); accord O'Gea v. Home Depot USA, Inc., No. 08-4744, 2009 WL 799757, at *4 (E.D. La. March 20, 2009).

Accordingly, the motion is GRANTED IN PART AND DENIED IN PART as to plaintiff's breach of contract claims and further proceedings are required as to her claim that defendant breached her employment contract by failing to pay her overtime and by extending her working hours.

## C.     Retaliation Claim Under La. Rev. Stat. § 23:967

Defendants also move to dismiss plaintiff's retaliation claim under Louisiana's Whistleblower Act, La. Rev. Stat. § 23:967.  Defendants again argue that this claim prescribed under Louisiana law no later than September 15, 2016, which was one year after Hunter resigned and was the last day that defendants argue any retaliatory act could have occurred.  Record Doc. No. 44-2 at pp. 13-14.  Defendants add that Hunter's claim is prescribed even if the last date of alleged discrimination was February 25, 2016, as stated in plaintiff's second amended complaint.  Record Doc. No. 41 at ¶¶ 61, 66(e).

Finally, defendants assert that plaintiff has failed to allege the required elements of a retaliation claim under Section 23:967. Record Doc. No. 44-2 at p. 15.

Plaintiff filed the instant lawsuit on March 9, 2017. The Whistleblower Statute provides in pertinent part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. Rev. Stat. § 23:967(A). According to the complaint, Hunter filed an employment grievance against defendant Floyd on August 12, 2015. She alleges that defendants then harassed her in retaliation for the grievance until she felt compelled to resign on September 15, 2015. She filed a formal charge of discrimination and retaliation with the EEOC on May 2, 2016, alleging that the unlawful acts of which she complained occurred between June 1 and September 15, 2015.[2] Plaintiff's Exh. B., Record Doc. No. 19-2. These are the dates upon which defendants rely for their prescription argument.

---

[2]

 Plaintiff's argument that prescription on her whistleblower claim "did not begin to toll until April of 2016 and that prescription was interrupted when she filed the EEOC Charge on February 13, 2016," Record Doc. No. 12 at p. 12, was previously addressed in the Order and Reasons dated July 7, 2017. Record Doc. No. 29 p.14. Filing a charge with the EEOC does not suspend the running of prescription for claims asserted under Section 23:967. See Langley v. Pinkerton's Inc., 220 F.Supp.2d 575, 581-82 (M.D. La. 2002); accord Williams v. Otis Elevator Co., 557 F. App'x 299, 302 (5th Cir. 2014); Haynes v. Ga. Pac., LLC, No. 14-743-JWD-RLB, 2016 WL 5660470, at *11 (M.D. La. Sept. 29, 2016).

However, Hunter asserts that defendant's retaliatory acts continued after she

resigned. She states in her opposition memorandum that, on March 15, 2016, she

> responded to Joseph's [February 15, 2016] letter advising defendant that
> his action was continuous harassment and an act of retaliation. After
> sending the March 15, 2016 letter[,] plaintiff was called by Joseph's
> administrative assistant asking if she was complying with the demands of
> the February 25th letter. The letter threatens plaintiff with litigation under
> the Public Records Act. This again was a continued effort to retaliate
> against the plaintiff.

Record Doc. No. 48 at p. 8. Hunter's second amended complaint and opposition do not

specify the date after March 15, 2016, when Joseph's administrative assistant called her.

Plaintiff argues that her "claims under La RS 23:967 are timely and not barred by

prescription" because the February 25, 2016 letter from Joseph and the call from Joseph's

assistant sometime after March 15, 2016 were continued acts of retaliation against

plaintiff. Id. Her complaint does not mention any "threats" or "adverse actions" received

in April or May 2016, but does mention the two dates on which she relies in her

opposition memorandum. Record Doc. No. 41 at ¶ 66.

The Whistleblower Statute forbids "reprisal" by an "employer," which "includes

firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as

a result of an action by the employee that is protected under Subsection A of this

Section." La. Rev. Stat. § 23:967(C)(1) (emphasis added). Plaintiff failed to brief

whether actionable reprisal may occur under Section 23:967 after a public employee has

left her employment or whether such acts might constitute a continuing violation that

would suspend the running of prescription.  Defendants briefed the continuing torts issue, arguing that

> [t]he continuous tort doctrine applies when a plaintiff suffers day to day violations causing damages.  Here, Plaintiff has not alleged such day-to-day violations after the termination of her employment.  Rather Plaintiff has alleged only that she quit her job in September 2015; the Board voted not to consider Mr. Koretzky's report in February 2016; Joseph requested Plaintiff's personal records in February 2016; Plaintiff responded to Joseph in March 2016, stating that such records request was a continuing effort to retaliate against and harass her; and Joseph's administrative assistant called Plaintiff after March 2016 asking if she was going to respond to the records request.

Record Doc. 44-2 at p.15 (citing Lejeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C., 981 So.2d 23, 32 (La. App. 3rd Cir. 2007) ("Under Louisiana law, to have a continuing tort there must be both 'continuous conduct' that causes 'continuing damages.'")).

In Williams, a case brought by a private employee alleging that his former employer violated the Louisiana Whistleblower statute, among others, the federal Fifth Circuit found that the continuous tort doctrine

> does not suspend the statute of limitations indefinitely for discrete acts of discrimination simply because the ripple effects of those acts cause lingering harm.  It is the tort that must be continuous, not the repercussions of that tort.  A continuing tort is occasioned by [the continual] unlawful acts, not the continuation of the ill effects of an original, wrongful act.

557 F. App'x at 302 (quotation and citation omitted) (brackets in original).  The alleged discriminatory conduct in that case ended when Williams was terminated, two years before he filed suit, such that the Whistleblower claim was time-barred by the one-year

prescriptive period.  Id.  The prescriptive period was not interrupted or suspended by a continuous tort because "'the complained of actions by the defendant were simply the continued ill effects that arose from a single tortious act.'"  Id. (quoting Cooper v. La. Dep't of Pub. Works, 870 So.2d 315 (La. App. 3d Cir. 2004)).

Applying the definition of a continuing tort outlined in Williams, I find that Hunter has failed to allege a sufficient factual and legal basis necessary to establish a continuing tort by defendants that would suspend the running of prescription.  As to all actions occurring more than one year before she filed suit on March 9, 2017, her claims are prescribed.  As discussed above, the sole act of Joseph's administrative assistant asking Hunter in March 2016 whether she would respond to Joseph's prior request for records was discrete and not continuous for purposes of extending the statute of limitations.  This last communication by Joseph's assistant was a mere ripple effect – not even an ill effect – of Joseph's final, pre-statute of limitations period alleged act of harassment.  The continuing tort doctrine "does not apply if 'the complained of actions by the defendant were simply the continued ill effect that arose from a single tortious act.'"  Id. at 301-02 (quoting Cooper, 870 So.2d at 323).

In addition, Hunter cannot assert a plausible claim for relief under the Whistleblower Statute based on any discrete act in 2016 because she was no longer an employee and could not suffer an adverse employment action, which is an essential

element of this cause of action. To bring a successful claim under Section 23:967, Hunter must plead

> 1) a workplace act or practice violates state law, 2) [she] informed [her] employer of the violation of state law, 3) [she] disclosed or threatened to disclose the violation, 4) [she] <u>suffered an adverse employment action</u>, and 5) the adverse employment action was suffered as a result of his whistleblowing activity.

<u>Phelps v. Calumet Lubricants Co., LP</u>, No. 15-2625, 2016 WL 4497011, at *3 (W.D. La. Aug. 24, 2016) (quoting <u>Herster v. Bd. of Supervisors of Louisiana State Univ.</u>, 72 F. Supp. 3d 627, 647 (M.D. La. 2014)) (internal citations omitted) (emphasis added).

As to the definition of an adverse employment action, "the <u>standards</u> governing [Title VII and Whistleblower Statute, La. Rev. Stat. § 23:967] claims are materially indistinguishable." <u>Strong v. Univ. Health Care Sys., L.L.C.</u>, 482 F.3d 802, 805 n.1 (5th Cir. 2007) (citing <u>Smith v. AT&T Solutions, Inc.</u>, 90 F. App'x 718, 723 (5th Cir. 1994); <u>Imbornone v. Treasure Chest Casino</u>, No. 04-2150, 2006 WL 1235979, at *3 (E.D. La. May 3, 2006)). Thus, the Title VII definition of "adverse employment action" is applicable to a retaliation claim brought pursuant to Louisiana's Whistleblower Statute. An employment action is one that affects "job title, grade, hours, salary, or benefits." <u>Wheat v. Fla. Par. Juvenile Justice Comm'n</u>, 811 F.3d 702, 707 (5th Cir. 2016) (citing <u>Stewart</u>, 586 F.3d at 332)). <u>See</u> <u>King v. Louisiana</u>, 294 F. App'x 77, 85 (5th Cir. 2008) (citations omitted) (allegations of rudeness and unfriendliness by supervisor and co-worker, "unpleasant work meetings, verbal reprimands, improper work requests and

unfair treatment do not constitute adverse employment actions as . . . retaliation"); Earle v. Aramark Corp., 247 F. App'x 519, 524 (5th Cir. 2007) (disciplinary write-ups and alleged micro-managing of plaintiff's performance not materially adverse actions). No action taken by defendants in 2016 could have been an adverse employment action since plaintiff no longer worked for the Board.

Accordingly, defendants' motion is GRANTED IN PART and plaintiff's claims under La. Rev. Stat. § 23:967 are dismissed with prejudice as prescribed.

D.    Title VII Claims of Gender-Based Discrimination, Harassment/Hostile Work Environment, and Constructive Discharge

Defendants argue that Hunter's claims against the Board for gender-based harassment and discrimination, hostile work environment and constructive discharge under Title VII should be dismissed because she "has failed to assert the required factual allegations [in her amended complaint]" necessary to raise her claims above the speculative level. Record Doc. No. 44-2 at p. 16. Plaintiff responds by referring back to Paragraphs 19-23 in her Original Complaint, Record Doc. No. 1 at ¶¶ 19-23, and Paragraphs 56-64 of her Second Supplemental and Amending Complaint, Record Doc. No. 41 at ¶¶ 56-64. Hunter clarifies the allegations in her second amended complaint that "[n]o other similarly situated male employee was subject to the previously described acts of harassment and those of gender discrimination," Record Doc. No. 41 at ¶ 64 (a)-(i), by

asserting in her opposition that four other female employees were treated "similarly," but that no male employees received similar treatment. Record Doc. No. 48 at pp. 9-11.

Contrary to defendants' argument, plaintiff need not plead all of the specific facts of a prima facie case of discrimination or harassment to survive a Rule 12(b)(6) motion to dismiss. Such a rule would impermissibly "substitute an 'evidentiary standard' for a 'pleading requirement.'" Raj v. La. State Univ., 714 F.3d 322, 331 (5th Cir. 2013) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)). Defendants' argument that plaintiff's gender-based harassment claim fails because she has not provided the names of comparators – Record Doc. No. 44-2 at p.19 and Record Doc. No. 52 at p. 10 – is inapplicable at this stage in the pleadings. The existence of suitable comparators is a question of proof. At this time, Hunter has more than plausibly and adequately stated sufficient facts to state gender-based harassment and discrimination claims under Title VII.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Id. "The creation of a hostile work environment through harassment . . . is a form of proscribed discrimination." Vance v. Ball State Univ., 133 S. Ct. 2434, 2455 (2013) (Thomas, J., concurring) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998); Meritor Sav. Bank, F.S.B. v. Vinson, 477 U.S. 57, 64-65 (1986)).

As with plaintiff's gender-based harassment and discrimination claim, Hunter has pled specific facts sufficient to state a hostile work environment claim under Title VII. She alleges that defendants created a hostile work environment when Floyd relocated her office, called and texted her outside of work hours, and publicly criticized her. Record Doc. No. 41 at ¶64(a)-(i).

To establish a discrimination claim under Title VII, Hunter must prove that she suffered an "adverse employment action," which is defined as an "ultimate employment decision[ ] such as hiring, firing, demoting, promoting, granting leave, and compensating." Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014) (citations omitted) (emphasis added). "[A] resignation may still constitute an adverse employment action 'if the resignation qualifies as a constructive discharge.' 'To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign.'" Brown v. Liberty Mut. Grp., Inc., 616 F. App'x 654, 657 (5th Cir. 2015) (quoting Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001)). "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote." Brown, 237 F.3d at 566 (citations omitted). Similarly, to establish constructive discharge based on a hostile work environment, Hunter "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Noack v. YMCA of Greater Houston Area, 418 F. App'x

347, 352 (5th Cir. 2011) (citing <u>Stover v. Hattiesburg Pub. Sch. Dist.</u>, 549 F.3d 985, 991 (5th Cir. 2008)).

Hunter's second amended complaint states specifically that "defendants['] conduct was a constructive termination of the plaintiff by causing her anxiety, emotional distress and a hostile work environment." Record Doc. No. 41 at ¶ 59. Her opposition further clarifies that "[t]he discrimination, isolation and harassment caused the plaintiff mental and physical problems. The continued isolation and the investigative process resulted in the constructive termination of the plaintiff. This is an adverse job action." Record Doc. No. 48, at p. 10. Hunter alleges plausible claims of gender-based harassment, gender-based discrimination and hostile work environment, including those described in the Koretzky Report attached to the complaint. She has alleged sufficient facts to support a plausible constructive discharge claim, which is an adverse employment action.

Accordingly, plaintiff's motion is DENIED IN PART and plaintiff's gender-based harassment and discrimination, hostile work environment and constructive discharge claims under Title VII against the Board are preserved for trial.

E.     Plaintiff's Retaliation Claim under Title VII

Defendants argue that Hunter's amended complaint fails to state a retaliation claim under Title VII. Record Doc. No. 44-2 at p. 23. Hunter alleges in her second amended complaint that Floyd, Joseph, and the Board's acts of retaliation consisted of: isolating Hunter after she filed the harassment grievance with the Board; removing her from her

office to an isolated office with darkened windows; not assigning her work and discouraging other employees from interacting with her; Floyd's public comment that voters approve of how he does business; the Board's 5-4 vote to not review the Koretzky Report; Joseph's demand that plaintiff deliver her private telephone, email and text messages to the Board; and Joseph's administrative assistant's call asking if Hunter was going to comply with the document request. According to her complaint, these actions were not taken against any similarly situated male employees. <u>See</u> Record Doc. No. 41 at ¶¶ 66(a)-(g).

Title VII protects an employee from retaliation <u>only</u> for having engaged in "a protected activity," <u>Amanduron v. Am. Airlines</u>, 416 F. App'x 421, 424 (5th Cir. 2011) (citing <u>Gee v. Principi</u>, 289 F.3d 342, 345 (5th Cir. 2002)), <u>i.e.</u>, because she has opposed a racial, ethnic, religious or gender-based employment practice, made a charge or participated in a proceeding regarding such a practice. <u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 58 (2006) (citing 42 U.S.C. § 2000e-3(a)); <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 561 n.28 (5th Cir. 2007). "Complaints to employers that do not complain of conduct <u>protected by Title VII</u> do not constitute protected activities under the statute." <u>Williams v. Racetrac Petroleum, Inc.</u>, 824 F. Supp. 2d 723, 726 (M.D. La. 2010) (quotation omitted) (emphasis added) (citing <u>Burlington N.</u>, 548 U.S. at 58)); <u>accord</u> <u>Raby v. Westside Transit</u>, 224 F. App'x 384, 385 (5th Cir. 2007) (citing <u>Grimes v. Tex. Dep't of Mental Health</u>, 102 F.3d 137, 140 (5th Cir. 1996)).

In this case, plaintiff claims that the grievance she filed with the Board in August 2015 was made as a result of a series of gender-based employment actions by Floyd. See Record Doc. No. 41 at ¶¶ 66(a)-(g). In response, defendants cite the burden-shifting framework for establishing a prima facie case of retaliation and assert that plaintiff cannot establish all three elements of retaliation. Record Doc. No. 44-2 at p. 23. However, the burdens of proof plaintiff must ultimately carry to assert a claim for retaliation successfully under Title VII are not at issue in a Rule 12(b)(6) motion. See Raj, 714 F.3d at 331. Plaintiff has alleged facts that could plausibly amount to retaliation for having filed a grievance. See Record Doc. Nos. 41 at ¶ 67, 48 at p. 10.

Accordingly, defendants' motion is DENIED IN PART and plaintiff's retaliation claim pursuant to Title VII is preserved for trial.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that defendants' motion to dismiss is GRANTED IN PART as follows: plaintiff's claims under 42 U.S.C. § 1983; for alleged violations of La. Rev. Stat. § 23:967; and for breach of contract alleging breaches of contractual obligations arising from the Harassment and Grievances Policies are DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6).

IT IS FURTHER ORDERED that defendants' motion to dismiss is DENIED IN PART in all other respects. Plaintiff's gender-based harassment and discrimination, hostile work environment, constructive discharge and retaliation claims under Title VII

and for breaches of her oral employment contract covering pay and hours, all against the Jefferson Parish School Board, are preserved for trial. The Clerk is directed to note that all claims against all defendants except the Board are terminated.

New Orleans, Louisiana, this ____13th____ day of October, 2017.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE